to your left is Justice Michael J. Murphy, and to my left to your right is Justice Pete Scott Neville. When the clerk calls your case, will you please approach your podium and give us your name and the amount of time in which you think it may take. Usually both sides is 15 minutes. However, we don't watch our clock in this division. You can have as long as you want. However, we ask you not to repeat yourself. We have read all the briefs. We have read all of the pertinent information pertaining to this case. We're familiar with it. So get to your key points first. Madam Clerk, we'll call the first case. May it please the Court, Counsel, Seth Horvath for the. Let us tell us your name first. Sure, Your Honor. Seth Horvath for the appellants, and I have some time for rebuttal, correct? Yes, Your Honor. About three minutes for rebuttal, I think, I'll need. If the other side will post a mention also, please. Sure. And give us your name and how long. Richard Boonstra on behalf of the plaintiff. Okay. I don't anticipate more than 15 minutes myself, Your Honor. Okay, thank you very much. Okay, Counsel. Thank you, Your Honor. Your Honor, we're appealing the Circuit Court's March 2011 final judgment in this case, which incorporated the terms of the May 2009 agreed settlement order between Reverend Rhee and the directors and the administrative commission, which is the plaintiff in this case. I'd like to make three points this morning. First, the administrative commission, a religious entity, lacked authority to act on behalf of Canaan Corporation, an Illinois not-for-profit corporation. As a result, the administrative commission had no authority to initiate this litigation and had no authority to enter the settlement order. If the court agrees with us on this point, it should reverse the Circuit Court's judgment and it should dismiss the litigation in its entirety. Second, the consideration for the settlement order failed when the administrative commission dissolved Canaan Presbyterian Church. As a result of the dissolution, the administrative commission was received from Canaan Corporation, while Reverend Rhee and the directors, who were supposed to retain control over the church, were left with nothing. This defeated the point of the party's bargain. It was bad faith on the administrative commission's part. If the court agrees with us on this point, it should reverse the Circuit Court's judgment, it should remand the case for further proceedings. And third, Your Honors, Reverend Rhee and the directors should have been given the opportunity to litigate their proposed amended counterclaim, which contained allegations relating to the Hammond Strategy document, a document that was a roadmap for the misconduct the administrative commission engaged in in this case. And if Your Honors agree with us on that final point. On that final point, could you elaborate that a little bit? Sure, Your Honors. The directors and Reverend Rhee filed a motion for leave to proceed on a proposed amended counterclaim before the Circuit Court. And the proposed amendment that we referred to in our briefs as the Hammond Strategy. The Hammond Strategy is a document that's a legal strategy memorandum that was prepared by a church official within the national church we're dealing with here, that's the PCUSA. And that document instructs a presbytery, a church body, to appoint an administrative commission and organize a loyal minority of the church congregation to declare it to be the true church and dissolve the church, and then cloak what it did in spiritual language. Was it protected by the First Amendment? Well, Strictly internal. Your Honors, there's a doctrine that's called the Neutral Principles Doctrine that lets the court resolve a purely secular dispute with the church. And the Hammond Strategy is just an element of a counterclaim that's based on bad faith and fraud and other bases for vacating the settlement order that was entered in this case. But as Justice Murphy just pointed out, the First Amendment denies the civil courts the right or the authority to make decisions that concern church policy or doctrine. This standing issue, doesn't it involve the question of who Reverend Reed is going to report to? Isn't that an internal matter? Doesn't that involve doctrine and policy? Well, Your Honor, the issue is really the control of the not-for-profit corporation here and who controls the not-for-profit corporation. The not-for-profit Can you separate that question from the presbytery? Yes, because the first point that I think the court is asking about is the argument we've made about the lack of authority to proceed with this lawsuit on the part of the Administrative Commission, which was an organ of the presbytery and the synod and the religious part of the church. And the point is, Your Honor, the first point of this element of the argument is that Canaan Corporation is different from Canaan Church. And that's a distinction that the court can recognize without having to go into any interpretation of religious dogma or religious doctrine. It can make that determination based solely on the articles of incorporation of Canaan Corporation and the bylaws of Canaan Corporation and non-religious documents. So Canaan Corporation was formed in 1977. At the time, it was called the Korean Presbyterian Church of Niles Corporation. And KPCN Corporation conducted religious activities through KPCN Church, the Korean Presbyterian Church of Niles. Those entities were later renamed Canaan Corporation and Canaan Church. The corporation has always been separate from the church. The corporation, Canaan Corporation, is governed by its board of directors. That board of directors is appointed on an annual basis by Reverend Ree, who is the president of the corporation. The church, the separate entity, is governed by a session. That session is selected with input from the congregation. And so there's no overlap between the selection of the board of directors and the selection of the members of the church session. And that leads to the second point of this argument that there was no authority for the administrative commission to do what it did here. Canaan Corporation, the secular entity, has to act through its board of directors. And that's clear based on the General Not-for-Profit Corporation Act. It's in Section 108.05. The affairs of the corporation shall be managed by or under the authority of the board of directors. It's also clear from the authority cited in our briefs, which demonstrates the observance of corporate formalities in church disputes. Assuming that's all correct, how does that affect the contract entered into between the parties? By the contract, Your Honor, you're referring to the settlement agreement? Isn't that what a settlement agreement is? It is. The settlement order that was entered in this case was a contractual arrangement between the parties that was signed off on by the court. Signed off by your client. That's right, Your Honors. The directors and Reverend Reed were signatories to the settlement order. But the administrative commission had no authority to enter into that order. The administrative commission was purporting to act on behalf of the corporation here. And because it couldn't act on behalf of the corporation, it couldn't enter into the settlement order. The settlement order, the litigation as a whole, was a nullity. And that gets back to the point that the board of directors here of Canaan Corporation didn't authorize the administrative commission to file this lawsuit against Reverend Reed. Instead, it was acting in its religious capacity. And when it did that, it usurped the authority of the board of directors by bringing the lawsuit. And that turns the analysis to the third point on this lack of authority argument. Canaan Corporation never subjected itself to the authority of the national church here, the PCUSA. The circuit court found that it did, based on its interpretation of the Articles of Incorporation of Canaan Corporation. The purpose clause of those articles states that the purpose of Canaan Corporation is to hold religious exercise, and here's the key language, based on the constitution and doctrines of the Presbyterian Church in the United States. And the circuit court misinterpreted this language because based on does not mean under or subject to or subordinate to. It gives the corporation the option of looking to PCUSA doctrine for guidance without requiring that it do so. It's not mandatory. And instead of interpreting the language as it was written, the circuit court inserted the word under for based on. And we've cited two cases that demonstrate that this was error. One is the Aglican case. Aglican was a dispute over church property. The church officials in that case that were appointed by the national church tried to seize the local church's property, and the national church claimed authority over the local church. The Articles of Incorporation that were at issue in Aglican actually contained stronger subordination language than what we're dealing with here. That language was that the local church was administratively and canonically an inseparable part of the national church and remained under its jurisdiction. And despite that language, the appellate court declined to find as a matter of law that the local church was subordinate to the national church. The second case on this point is the Genasi case. Genasi was also a dispute over church property. In Genasi, one faction of a local church transferred local church property from one church organization to another. The bylaws that were in question in the Genasi case, like the Articles of Incorporation in Aglican, also contained stronger subordination language than the purpose clause that was before the circuit court here. That language was that the local church recognized as its head the national church. And in spite of that language, the appellate court in Genasi found that the language did not vest control in the national church and the national church itself wasn't a party to the bylaws. Counsel, let me ask you a question. You maintain that the trial court erred when it refused to vacate the settlement order.  That's right, Your Honor. And you also maintain that the church lacked, that the parties lacked standing to participate in the settlement agreement. Yes. Is that your position? Yes. Do you have a case which holds that a lack of standing is a basis for vacating a settlement order? Your Honor, we have cited a case, it's the Filosa v. Pecora decision. And Filosa holds that a court will vacate a consent decree or a... Can you give me the citation of that case? Sure, Your Honor. The citation for Filosa is 18 Ill App 3rd, 123. It's first cited on page 24 of our opening brief. And so Filosa's point is that a court will vacate a consent decree if it lacks jurisdiction over the parties to the suit because the interest of the party is not before the court or not bound by a decree. Jurisdiction and standing are two different things, aren't they? I think about subject matter jurisdiction and jurisdiction over the party. Now, tell me how standing and jurisdiction are one and the same. Well, Your Honor, you can look at it in terms of standing, you can look at it in terms of lack of authority, but if the... Subject matter jurisdiction is the power of the court to hear a case. That's correct. And that's delineated in the Constitution. Circuit court has jurisdiction over all justiciable matters. And then the parties, the court has to acquire jurisdiction over the parties by serving the summons. Now, explain to me how standing is a jurisdictional issue. Well, it's really, it's a matter in a way of personal jurisdiction over the corporation in this case. The corporation that the administrative commission said it was acting on behalf of wasn't a proper party to the litigation. It's a jurisdiction of the court, correct? Yes, Your Honor, we are. We're saying that the court did not have authority because it didn't have authority to enter the settlement order because one of the parties to the settlement order, the corporation itself, wasn't properly before the court because a religious entity, the administrative commission, was trying to represent the corporation's interests. And it couldn't because the corporation acts through its board of directors. And the administrative commission never received the approval of the board of directors to proceed with litigation against Reverend Ree. It never would have. And the argument was first raised in the context of standing in a motion dismissed that was filed early in the litigation. And the circuit court denied that motion to dismiss. And subsequently throughout the course of the litigation, the argument about the administrative commission's lack of standing or lack of authority was raised again and again, including in the motion to vacate the settlement order. And the court simply relied on its original rationale in denying the motion to vacate. And that rationale was erroneous because the court failed to recognize this distinction between the church and the corporation and the fact that the administrative commission cannot act on the corporation's behalf. Our second point, Your Honors, aside from the lack of authority to enter into the settlement order, is that the consideration for the settlement order failed. The consideration that Reverend Ree and the directors received under the settlement order was that Reverend Ree was recognized as the installed pastor of Canaan Church. The directors were recognized as the elders of Canaan Church. And the church itself was recognized as a particular church within the national church, within the PCUSA. In exchange, the administrative commission received approximately $10 million in property from Canaan Corporation that it was supposed to hold in trust for the national church, for the PCUSA. The consideration for the settlement order failed when the administrative commission dissolved Canaan Church, which it did only a year and a half after the settlement order was entered and before the entry of a final judgment in the case. Through the dissolution, Reverend Ree and the directors lost their authority over the church, but the administrative commission kept the property. And there just can't be any doubt that Reverend Ree and the directors never would have entered the settlement order if they knew that the administrative commission would dissolve the church and keep all the property. The terms of the settlement order itself and its attachments demonstrate that failure of consideration. One of the items that was incorporated into the settlement order was the administrative commission's decision. The litigation was settled because the administrative commission instructed the parties to settle it. Its decision recognizes Reverend Ree's status as an installed pastor. It recognizes the membership and ordination of the directors. And it also states that the settlement must not take any actions against Reverend Ree inconsistent with his position as pastor. In addition to the administrative commission's decision, which is incorporated, the settlement order itself recognizes Canaan Church as a particular church within the PCUSA. And a church that's dissolved can't be a particular church. It just doesn't exist anymore. So those provisions just further demonstrate that when the church was dissolved, the point of the party's bargain was defeated. And if your honors don't think there was a failure of consideration, and we feel there was, the same facts show a violation of the settlement order's implied covenant of good faith and fair dealing. To the extent the administrative commission had any discretion under the settlement order, it abused that discretion by dissolving the church. If there's two possible interpretations of an agreement, like the settlement order, the one that doesn't impute bad faith in any way is the one that has to be adopted. And here that interpretation is that Reverend Ree and the directors were to remain Canaan Church's pastor and elders and continue their ministry. I've mentioned the Tamman strategy already, your honors. I just want to reiterate as my third closing point that Reverend Ree and the directors should have been allowed to litigate their counterclaim, their counterclaim that relied on the Tamman strategy document as a basis for invalidating what the administrative commission did here. They sought leave to file that counterclaim. The circuit court never even ruled on their motion. Instead, it just simply entered a final judgment, and that was an error. However, the counterclaim relates directly to showing that the church would be dissolved once title to the property was transferred to the administrative commission, and Reverend Ree and the directors should have been allowed to litigate those issues. If your honors have no further questions at this time, we'd ask that you dismiss the case or, in the alternative, remand it to the circuit court for further proceedings. Thank you. Good morning. Thank you. I need to clarify a huge factual discrepancy that my opponent is relying upon. It is absolutely not true that the Synod AC ever had title to this property. It is also absolutely not true that the Synod AC was in a land grabber, was trying to, I think in his words, left his clients with nothing. It's absolutely not true. The Synod AC did exactly what it was supposed to do here. It performed exactly according to the church constitution. An important document that has been, I think, overlooked is attached to my brief. It's the schism document that was prepared by the Synod AC, and that's at the supplement SA-37 is where it begins, and it specifically states that, and I'm going to read from this document in an effort to show that the defendant's characterization, factual characterization, of leaving them with nothing was absolutely not what the Synod AC was trying to do. This is what it says on SA-38. It says, following from this schism, the Synod Administrative Commission, acting as the Midwest Hanmi Presbytery, dissolves the congregation and will facilitate the chartering of two separate viable Presbyterian churches, USA congregations, whose memberships will be in separate presbyteries. And then the document goes on to actually divide the land. That's on the second page. One faction gets this part of the land. The other faction gets that part of the land. It is not true that these defendants were left with nothing. What is true is that they did not want to follow the laws of their own church. There's four orders that were entered by the trial court in this case. All of them were exactly correct. Two of them were entered by Judge Epstein. Two of them were entered by Judge Hyman. The first order that he referred to was entered by Judge Epstein. That pertained to the motion to dismiss. And Judge Epstein, this is a quote right from his order of November 2, 2007, in which he is addressing this motion to dismiss. And this summarizes the exact principle upon which standing is based. Canaan Presbyterian Church, and this is where the quote starts, voluntarily joined and continues to hold membership in the Presbyterian Church. Canaan Presbyterian Church has made no effort to withdraw itself from the Presbyterian Church. Therefore, it is bound by the laws of that church. That's not something he just pulled out of thin air. He looked at the church doctrine. He looked at the relevant corporate, real estate, and financial documents and made a determination that this church was subject to the Book of Order, and the Book of Order provisions govern the situation. The documents that he relied upon were these. First, there's a real estate deed that very clearly contained trust language involving the Presbyterian Church. There was financial dealings where the Presbyterian Church made loans to acquire the land. There's corporate records, articles of incorporation, specifically provided that it is based upon the doctrines of the Presbyterian Church. There was an amendment to the articles that said the same thing in a little bit different language. Those were the facts upon which Judge Epstein entered his correct order, finding that the Synod Administrative Commission had standing to enter the dispute here between factions in this church. The Synod Administrative Commission did exactly what it was supposed to when there's a conflict in the church. The second order that was properly entered was done on May 15, 2009, and that is the Agreed Settlement Order. That order was signed by the defendants to the extent there was any question about whether they were subject to the Book of Order and whether the corporation was subject to the Book of Order. That was dispelled by the entry of that order. That order contained specific findings of fact. Those findings of fact provided, consistent with Judge Epstein's order, they provided these defendants, their property, their church, their corporation, are all subject to the Book of Order, and the Synod Administrative Commission has the authority over them. The problem is they don't want to follow the rules of the church. That was the problem throughout the litigation, and it's the same problem today. They either want to be part of the Presbyterian Church and do whatever they want and not abide by the Administrative Commission's rules, or they want to be independent of it. But it's too late. They submitted to the power of the church, as Judge Epstein pointed out in the first order, as they themselves confirmed in the second order, the Agreed Settlement Order on May 15, 2009. And then what follows is really the self-execution of the stage that's already been set, and that includes the two orders entered by Judge Hyman. The first one entered January 26, 2011, in which he addresses the issue of whether he should vacate the Agreed Settlement Order. Judge Hyman very carefully goes through each of the claimed bases to vacate the order, consideration, fraud, rescission, coercion. I think there was five different bases that they advanced. He analyzes each one of them and then explains why none of them apply here. The facts just don't exist. The law doesn't support vacating this. Essentially, what are facts? The Agreed Order contains facts. What they wanted to do was really un-find facts that they had already admitted were facts, and there was really no basis to do that. Finally, the ultimate order entered in the case, the March 8, 2011 order, basically built upon all the rest of the orders and were consistent with those orders and ultimately entered final judgment in favor of the Senate Administrative Commission. The case was done at that point, but then we go into this drama created by the defendants involving the Tammons strategy, as if there's some national conspiracy for the general church organization to take the land of individual churches. Absolutely no basis to that. The Tammons strategy, and you don't really need to look at the First Amendment there. You can just look at the timing and get it resolved. The Tammons strategy, so-called, was a church memo that was created September of 05. That's before this case was even filed. This is old evidence being advanced as a new theory in a case almost a year after the case has already been decided. They had filed their own counterclaim already. That was in May of 08. The Agreed Order was entered in May of 09. The final order of March 8, 2011, they're seeking leave to file this counterclaim September 29, 2011. Six months after the case is already done, they're going to march in the court with what they claim is new evidence that's actually very old evidence, and they're going to try to advance some entirely new theory of someone that they actually had the opportunity to depose in the case as well. There's no basis. It was absolutely the right order to deny them the right to file that counterclaim. That counterclaim was flimsy. At the hearing that's contained in the record, they admitted that it was based upon Internet research. That's where they found it, at the last minute. It's kind of like their last Hail Mary. We can't go down in this case. We've got to retain control somehow. It was totally bogus, totally flimsy, and Judge Hyman, I think, said very clearly he had no idea where this came from. And the reason is because it was too late, too little, too late. It was really not a motion for leave to file a counterclaim. What it was really was a motion to reconsider that was masquerading as a motion for leave to file a counterclaim in an effort to take advantage of liberal pleading. A motion to reconsider, as I'm sure the court knows, has very specific requirements before it's granted, and none of those are satisfied here. There was not new evidence, there was not new law, and there was no error in the application of the law. There's no basis to allow these defendants to file this counterclaim six months after the case was already finished. I could say one more thing about the consideration, since he spent some time in his argument about that. The agreed settlement order very specifically provides that the trespass count in the complaint was going to be dismissed. So the defendants were going to be permitted to continue to be on the property. However, and that was consideration for the agreed settlement order, however, they were still going to submit to the authority and the laws of the church. That is what they did. That did not mean, therefore, that their statuses were guaranteed for all time. They had to. They must continue to be subject to the laws of the church and could not just defy those and claim, it doesn't matter, we can do whatever we want. That's all that the agreed settlement order did, was establish the authority and the governing documents. The cases that they've relied on, these three cases, Aglikin, Genosi, and the York case, are all very important church property cases. They all involve the neutral principles of law analysis that the court is supposed to do in attempting to resolve a dispute when there hopefully are not religious issues. In none of those cases is the constitutional foundation or the constitutional link between the local church and the general church as powerful as it is in this case. In this case, it is clear. In all those three cases, for one reason or another, the connection is loose. There's escape holes here and there. And so the court said it just wasn't that clear. That is not the case here. This case is clear. And if it wasn't clear by the agreed settlement order, they made it clear by their own conduct. Thank you, Your Honor. In rebuttal, Your Honors, I have three points. The first relates to counsel's comments on this lack of authority argument. The administrative commission's position continues to be that the national church always had authority over Canaan Corporation, the secular corporate entity that we're dealing with here. And that argument just disregards over 30 years of separation between the corporation and the church. The corporation was set up as a separate not-for-profit corporation in 1977. And throughout its existence, it continued to maintain that separation between the corporation and the church. The administrative commission's position would really create a situation where a church can come in at any time and start to exert control over a separate corporate entity. And that's a very dangerous precedent. On the Tamman strategy issue, the counterclaim issue, counsel has tried to de-emphasize the significance of this Tamman strategy document. And it's understandable why, because the document sets out a strategy, which is the strategy that was followed here by the administrative commission when the administrative commission came in, settled the case, and then dissolved the church, keeping the church's property and taking away what Reverend Reed and the directors got as a result of the settlement. So the Tamman strategy document is the plan. It's the outline for the administrative commission's conduct here. And as soon as that document came to light, the motion for leave to file the counterclaim based on that document was filed. And had Reverend Reed and the directors been allowed to litigate the counterclaim, they would have had an additional basis for vacating the settlement order that was entered. And then finally, Your Honors, on the failure of consideration, we're not suggesting that Reverend Reed and the directors had an unqualified guarantee that they would always remain the elder and the pastor of the church, but they had a reasonable expectation, a right to at least maintain that status, pending some type of further disciplinary action. And the disciplinary charges against Reverend Reed and the directors within the church were dismissed within the church, and that was recognized in the settlement order. And despite their reinstatement, despite their exercise of the offices of pastor and elders, the administrative commission came in and it dissolved the church and took away Reverend Reed's ability to minister to his congregation and took away the directors' abilities to continue to serve as elders. So if Your Honors have no further questions, I'd ask that you dismiss the case or, in the alternative, remand it to the circuit court for further proceedings. Thank you. Question. Yes, sir. Are we to judge the disciplinary action? No, Your Honors, no. It's not necessary to do that in this case. Good. Anything else? Okay. Counsel, thank you. We'll take this matter into advisement. This court is adjourned. Thank you. Thank you.